## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STUART C. IRBY COMPANY<br><br>Plaintiff,<br><br>v.<br><br>HYPOWER, INC. and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT** |

Stuart C. Irby Company ("Irby") files this complaint against Hypower, Inc. ("Hypower") and The Insurance Company of the State of Pennsylvania ("ICSOP").

### NATURE OF THE ACTION

1.    Irby supplied electrical materials to Hypower, Inc. for use in a construction project (the "Project") at the United States Air Force Base located in Dover, Delaware. Hypower did not pay Irby the full price owed for the materials Irby supplied.  Therefore, for the amounts owed to Irby, Irby submitted a claim on a Subcontract Labor and Material Payment Bond (the "Bond") issued in connection with the Project.  Hypower is the principal on the Bond and ICSOP is the surety.   The Bond makes Hypower and ICSOP jointly and severally liable for payment to parties that furnished materials for use by Hypower on the Project.

2.    ICSOP and Hypower have not paid Irby's Bond claim.  After Irby submitted its Bond claim, Hypower sent Irby correspondence asserting claims against Irby for alleged damages exceeding $3.5 million.  Hypower asserted that the claimed damages arose from (1) alleged delays in receipt of certain materials from Irby for use on the Project, (2) alleged costs incurred to replace certain materials Irby supplied for the Project and (3) the alleged loss of

1

other potential contracts with the Project owner and another contractor.  Hypower and ICSOP have used those allegations as a pretext to refuse to pay Irby's Bond claim.

3.     All of Hypower's assertions are false.  Irby supplied the materials Hypower requested.  Also, any alleged delays in the delivery of materials arose from Hypower's actions, including changing specifications of certain materials from the specifications stated in its original purchase order.  Irby did not cause Hypower to lose potential contracts.

4.     By its complaint, Irby seeks payment from Hypower and ICSOP for all of the materials Irby supplied to Hypower for use on the Project, including related service charges and collection costs.  Irby also seeks a declaration that Irby did not violate any of its contractual obligations to Hypower and is not otherwise obligated to Hypower in connection with the materials that Irby supplied for use in the Project.

## THE PARTIES

5.     Irby is a corporation incorporated under the laws of Mississippi.  Irby's principal place of business is located in Jackson, Mississippi.

6.     Hypower is a corporation incorporated under the laws of Florida.  Hypower's principal place of business is located in Ft. Lauderdale, Florida.

7.     ICSOP is a Pennsylvania insurance company.  ICSOP's principal place of business is located in New York, New York

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Additionally, pursuant to

28 U.S.C. § 2201(a) there is an actual controversy between Irby and Hypower for which declaratory relief is proper.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Irby's claims occurred in this judicial district. Furthermore, the Bond, executed by both Hypower and ICSOP, limits the venue of bond claimant suits to state or federal courts located in the county or federal district where the project is located. As stated above, Irby supplied the materials at issue in this dispute for use in a project located in Dover, Delaware.

## FACTS

*The Credit Agreement.*

10.      On January 13, 2010, Hypower executed an Irby Application for Credit and Billing Information (the "Credit Agreement").

11.      A copy of the Credit Agreement that Hypower executed is attached as Exhibit 1.

12.      The Credit Agreement states that "IN SUBMITTING THIS APPLICATION, I ACKNOWLEDGE THAT I HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS OF SALE PRINTED ON THE REVERSE OF THIS APPLICATION." *See* Exhibit 1.

13.      Among other provisions, the "TERMS AND CONDITIONS OF SALE" ("Credit Agreement Sales Terms") provide that "[t]hese terms supersede any that might be stated in . . . [Hypower's] purchase order or acknowledgement." *See id.*

14.      The Credit Agreement Sales Terms impose a 1.5% per month service charge on all delinquent amounts Hypower owes Irby that accrues from the date the amounts owed became due until the amounts are fully paid. *See id.*

15.     Also, the Credit Agreement Sales Terms make Hypower liable to Irby for attorneys' fees, costs and expenses Irby incurs to collect amounts owed to Irby.  *See id.*

16.     The Credit Agreement Sales Terms further provide that Irby's liability for any nonconforming materials is limited "to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts."  *See id.*

17.     Additionally, the Credit Agreement Sales Terms provide that "in no event shall . . . [Irby] be liable for consequential damages."  *See id.*

*Irby furnished materials to Hypower for use in the Project.*

18.     Hypower was a subcontractor to CH2M Hill Constructors, Inc. ("CH2M"), another subcontractor on the Project at issue in this dispute.

19.     The Project, located at the United States Air Force Base in Dover, Delaware, is referred to in many of the documents relevant to this dispute as "Bury Overhead Electric to Underground Phase I, Dover AFB, DE."

20.     Beginning in June 2011, Irby sold electrical materials to Hypower for use in the Project.

21.     Irby last furnished material to Hypower for the Project on April 30, 2012.

*The Bond.*

22.     In connection with the Project, Hypower and ICSOP executed a Subcontractor Labor and Material Payment Bond (previously defined as the "Bond").  The Bond identifies ICSOP as the surety, Hypower as the principal and CH2M as the obligee.

23.     A copy of the Bond is attached as Exhibit 2.

24.     The Bond makes Hypower and ICSOP jointly and severally liable to Bond claimants who are not fully paid for materials furnished to Hypower for Hypower's use in the Project. *See* Exhibit 2.

25.     The Bond defines "claimant," in part, as any party with a direct contract with Hypower that furnishes materials for use in the Project. *See id.*

26.     Irby satisfies the definition of "claimant" stated in the Bond. *See id.*

*Irby's Bond Claim.*

27.     Irby was not fully paid for the materials it sold to Hypower for use in the Project.

28.     On June 6, 2012, Irby timely presented to ICSOP and CH2M a claim (the "Bond Claim") for a principal amount of $194,459.67.

29.     Irby's Bond Claim with supporting documents that include a statement of Hypower's account with Irby, relevant unpaid invoices, and proof of delivery is attached as Exhibit 3.

*Hypower's refusal to pay Irby's Bond Claim due to*
*Irby's alleged "material[] breach[es]" of Irby's contract with Hypower.*

30.     After Irby submitted its Bond Claim, Irby received correspondence from Hypower dated June 15, 2012, but not transmitted to Irby until July 23, 2012 (the "July 23 Letter").

31.     A copy of the July 23 Letter is attached as Exhibit 4.

32.     In the July 23 Letter, Hypower acknowledged receipt of Irby's Bond Claim. Hypower stated that it refused to pay the Bond Claim because Irby had allegedly "materially breached its contract with Hypower . . . ." *See* Exhibit 4.

33.     The "material[] breach[es]" Hypower alleged concerned a claimed "fail[ure] to timely deliver" certain materials "including five ABB Switchgears and five Howard

Transformers." Hypower then claimed "significant delay damages for the additional time to perform its scope of work" of $274,445.10. *See id.*

34.    Hypower also alleged in the July 23 Letter that Irby supplied Hypower with "incorrect wire." Hypower claimed that as a result it was allegedly "forced to remove the incorrect wire and replace it with the proper materials" at a cost of $325,752.00. *See id.*

35.    Finally, Hypower claims that Irby's alleged "material[] breach[es]" also made Irby liable to Hypower for purportedly "inhibiting the procurement of future work from the present contracted client, as well as the owner in the amount of 3 Million dollars contracted amount which has been subsequently rescinded." *See id.*

*Irby has not breached a contract with Hypower.*

36.    Irby timely delivered all of the materials it sold to Hypower.

37.    However, for certain materials that Hypower ordered, Hypower changed the material specifications of its original order approximately three months after submission of the order to Irby.

38.    Hypower's changes, of course, necessarily affected anticipated delivery dates.

39.    For other materials that Hypower purchased, delays in delivery were caused by Hypower's failure, after repeated requests, to provide in a timely manner signed acceptance drawings required by the material manufacturer to process the material order.

40.    Therefore, Hypower, not Irby, caused delivery of materials to occur at dates later than Hypower allegedly originally anticipated.

41.    With regard to Irby's sale of allegedly "incorrect wire" to Hypower, Irby sold Hypower the wire Hypower specified by catalog number in Hypower's purchase order.

42.     If the wire Hypower ordered was indeed incorrect, the fault lies solely with Hypower.

## COUNT 1
## ENFORCEMENT OF THE DEFENDANTS' BOND OBLIGATIONS

43.     Irby incorporates all of the preceding allegations.

44.     The Bond's provisions make the defendants jointly and severally liable to claimants who furnished materials for Hypower's use on the Project, but who were not fully paid.

45.     Irby furnished materials for Hypower's use in the Project and was not fully paid.

46.     The unpaid principal balance the defendants owe Irby is $194,459.67.

47.     The defendants are also liable under the Credit Agreement Sales Terms for a service charge of 1.5% per month to cover Irby's additional cost of handling the account as well as the attorneys' fees, costs and expenses Irby has and will incur to collect the amounts owed to Irby.

## COUNT 2
## BREACH OF CONTRACT

48.     Irby incorporates all of the preceding allegations.

49.     Hypower was contractually obligated to pay Irby the amounts owed for Irby's sale of materials to Hypower.

50.     Hypower failed to fully pay Irby for the materials Irby furnished to Hypower.

51.     The unpaid principal balance that Hypower owes Irby is $194,459.67.

52.     Hypower is also liable to Irby under the Credit Agreement Sales Terms for a service charge of 1.5% per month to cover Irby's additional cost of handling the account, as well

as the attorneys' fees, costs and expenses Irby has and will incur to collect the amounts owed to Irby.

## COUNT 3
### DECLARATORY RELIEF

53.     Irby incorporates the preceding allegations.

54.     Contrary to Hypower's allegations respecting the timeliness of Irby's delivery of materials for the Project and respecting the delivery of allegedly incorrect materials, any damages Hypower incurred were the direct and proximate result of its own acts or omissions and/or they are barred by the Credit Agreement Sales Terms.

55.     The demands by Irby and the denial by Hypower represent an actual controversy between these parties with respect to the rights and obligations arising out of the Credit Agreement Sales Terms, and those rights and obligations are ripe for determination by this Court.

### PRAYER FOR RELIEF

ACCORDINGLY, Irby respectfully requests that the Court enter a judgment in its favor awarding the following relief to Irby:

a.     finding the defendants jointly and severally liable to Irby on the Bond for

    (i)     the unpaid principal balance owed for the materials Irby furnished to Hypower,

    (ii)     service charges of 1.5% per month from the date each component of the unpaid principal balance became due until the principal balance is fully paid to Irby;

       (iii)     attorneys' fees, costs and expenses Irby has and will incur to collect the amounts owed to Irby and

      (iv)     pre and post-judgment interest;

b.    finding that Hypower breached its contract with Irby and is liable to Irby for

      (i)     the unpaid principal balance owed for the materials Irby furnished to Hypower,

      (ii)     service charges of 1.5% per month from the date each component of the unpaid principal balance became due until the principal balance is fully paid to Irby;

      (iii)     attorneys' fees, costs and expenses Irby has and will incur to collect the amounts owed to Irby and

      (iv)     pre and post-judgment interest; and

c.    declaring that Irby has not breached any contract with Hypower and is not otherwise liable to Hypower for the damages alleged in the July 23 Letter or for any other amounts.

Respectfully submitted,

ECKERT SEAMANS CHERIN
& MELLOT, LLC

Mark L. Reardon (DE Bar #2627)
Matthew P. Donelson (DE Bar #4243)
300 Delaware Avenue
Suite 1210
Wilmington, Delaware  19801
mreardon@eckertseamans.com
mdonelson@eckertseamans.com
Telephone:  (302) 425-0430
Facsimile:  (302) 425-0432
*Attorneys for Plaintiff Stuart C. Irby Company*